## Ex parte WONG TUNG DUNG.

District Court, W. D. Washington, N. D. April 13, 1927.

### No. 11388.

**Aliens 32(9)—Alien, denied admission as son of native-born Chinese citizen, held not denied fair hearing in view of evidence.**

Refusal of admission of petitioner as son of native-born Chinese citizen *held* after a fair hearing and on sufficient evidence.

Habeas Corpus. Petition of Wong Tung Dung for writ of habeas corpus. Denied.

John J. Sullivan, of Seattle, Wash., for petitioner.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

NETERER, District Judge. The petitioner claims to be a citizen, son of a native-born Chinese, and denied admission. The father, it is claimed, was born November 1, 1873, and taken to China when a small child, was married, and had four boys. One has been admitted. The petitioner, a third son, it is claimed, was born February 17, 1895. The alleged father came to the United States in June, 1896, and was discharged by Commissioner McGettrick as native-born, and his nativity is conceded to be res adjudicata. The petitioner is 32 years old. The father has not seen him since shortly after his birth. The testimony of blood relationship is based upon the testimony of the brother, Wong Tung Fook, admitted, and Yee Bow Lung, whose knowledge is predicated upon an alleged visit to China five or six years ago, when he, for the alleged father, took $200 to the wife of the alleged father, and there met the wife and the four brothers. He was with them about one-half hour.

This case rests upon lack of knowledge of Yee Bow Lung to testify as to blood relationship and upon "discrepancies and improbabilities"—circumstantial evidence of relation and conduct. Members of a family should be able to agree as to many things, even though insignificant, about the habits of the members of the family and of the home, of the school, of the neighborhood, and of the environment of the town. The burden being upon the petitioner to establish relationship, the direct testimony is expected to be regular, and often the only safety the department has is in "discrepancies." Any other rule would make the Exclusion Act (Comp. St. § 4290 et seq.) futile, and subject the United States to the design of mercenary exploiters and imposters,

and impose upon the citizenry of this government. The fact that further opportunity was not given to explain all discrepancies is not denial of a fair trial. Nor is the department required to point out every discrepancy in the testimony and defect in the proof giving rise to doubt. See Lee Loy v. Nagle (C. C. A.) 15 F.(2d) 50.

This court has been frequently impressed by the ability of Chinese petitioners before this court, born in the United States, to procreate males. It is rarely that a female is born in such a family, and, when born, frequently dies in infancy, and, when the exception does obtain, it is after birth has been given to from two to seven males. If the same relative procreative ability rests with the Chinese nation, a lay mind is unable to conceive how the few Chinese women born can give birth to 450,-000,000, or more, of people, even in the many centuries of the Chinese race and history.

An examination of the record shows that no right has been denied to the petitioner, that every facility and opportunity was offered to produce proof, and he failed, and the court cannot say that a fair trial was denied.

Writ denied.